[Civ. No. 2076.    Third Appellate District.—August 30, 1920.]

OUTER HARBOR DOCK AND WHARF COMPANY (a Corporation), Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[1] TAXATION — PAYMENT OF TAX UNDER ERRONEOUS DECISION — VESTED RIGHT TO RECOVER — OVERRULING OF OPINION. — An erroneous decision by the supreme court holding that certain property rights are not subject to taxation has not the effect of a statute, so as to vest in the owner of such a property the right to recover taxes thereon paid under protest subsequent to the rendering of such decision but prior to overruling by the supreme court, in a later case, of the views therein expressed.

[2] ID. — SUPREME COURT DECISION — EFFECT OF — PAYMENT OF JUST OBLIGATION.—The rule that a decision of the supreme court has the effect of a statute is to be applied only when considerations of justice and equity demand it; and such is not the case where a person has been required to pay a just obligation to the government, although mistakenly supposed at the time to be unjust.

[3] ID.—SEPARATE ASSESSMENT OF LAND AND IMPROVEMENTS—EFFECT ON CHARACTER AND OWNERSHIP.—While, under article XIII, section 2, of the constitution, land and improvements are to be separately assessed for purposes of revenue, such separate assessment cannot affect the character of the improvements or their ownership; and if such improvements, as well as the land, belong to the public, they will remain so, notwithstanding they are assessed to the person holding the leasehold interest in the land and are not taxable.

[4] ID. — LEASEHOLD INTERESTS IN PUBLIC PROPERTY — LIABILITY TO TAX.—A leasehold or possessory interest in improvements erected

on tide-lands belonging to the state, like a leasehold or possessory interest in such lands, is subject to taxation.

[5] ID.—RECOVERY OF ERRONEOUS TAX—CONCURRENT REMEDIES—TIME. Sections 3804 and 3819 of the Political Code afford concurrent remedies for the recovery of taxes paid under a void or erroneous assessment; and where the aggrieved party proceeds in accordance with the provisions of section 3804 of the Political Code, and the complaint to recover such taxes shows that a verified claim therefor was not filed within three years after their payment, a demurrer to the complaint is properly sustained.

[6] ID.—ACTION BY CITY TO RECOVER PROPERTY—ESTOPPEL TO COLLECT TAX.—A municipal corporation is not estopped from levying and collecting a tax on the leasehold interests of a private person in tide-lands and the improvements thereon by reason of the fact that it has commenced a suit against that person to quiet title to and to obtain possession of said property, averring in its complaint that it is the owner and entitled to the possession of the property and that the defendant has no interest therein or right to the possession thereof, in which action the decision is in favor of the city as to a large portion of the land, where pending such litigation, and during the years that such assessments are levied and collected, the defendant remains in the actual possession and enjoyment of the use of the property.

[7] ID.—DEPRECIATION OF VALUE BY LITIGATION—REMEDY OF OWNER. If in consequence of such litigation the value of the possessory interest in property is greatly depreciated, and the owner is unduly assessed, in order to obtain relief, he must make application to the board of equalization, the tribunal created for the purpose.

[8] ID.—ESTOPPEL—POWER TO LEVY AND COLLECT TAX—IMPROPER ASSESSMENT—REMEDY OF AGGRIEVED PARTY.—The doctrine of estoppel is not to be invoked against the exercise of the sovereign power of the state to levy and collect taxes for the support of the government, except in instances of gross injustice; but, ordinarily, where a mistake is made in the assessment or levy or an unjust burden has been imposed, the aggrieved party, in order to obtain relief, must pursue the remedy provided by the statute.

APPEAL from judgments of the Superior Court of Los Angeles County.   Grant Jackson, Judge.   Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

5.   Recovery of illegal tax, notes, 45 **Am. Dec.** 164; 94 **Am. St. Rep.** 425; 8 **Ann. Cas.** 669; 10 **Ann. Cas.** 1050; **Ann. Cas.** 1915A, 495.

Andrews, Toland & Andrews and Andrews, Toland, Gregg & Andrews for Appellant.

Albert Lee Stephens, City Attorney, Charles S. Burnell, City Attorney, Jess E. Stephens, Assistant City Attorney, and Wm. P. Mealey, Assistant City Attorney, for Respondent.

BURNETT, J.—The appeal involves two cases between the same parties in which the same questions are raised, and which by stipulation are presented in one record and as one appeal. The actions were brought to compel the city of Los Angeles to refund taxes alleged to have been illegally and erroneously collected by the tax officers of said city during the years 1911, 1912, 1913, and 1914, from plaintiff, on assessments against "improvements" upon the tide-lands within the city of Los Angeles and fronting upon the navigable waters of Los Angeles harbor, and for the years 1915 and 1916 against plaintiff's leasehold interest in a certain *wharf and two warehouses* upon said tide-lands, and for the year 1915, *against plaintiff's leasehold interest in said tide-lands,* said tide-lands being owned by the state of California and held by plaintiff under lease from the city of San Pedro, the municipal predecessor of the city of Los Angeles. The lease was made in February, 1906, and was approved and ratified by the legislature by an act of March 23, 1907. The lease was rewritten in July, 1907, in order to conform to certain changes in the harbor lines as made by the United States war department. The general scope and purpose of said lease may be gathered from the following quotation from *Koyer* v. *Miner,* 172 Cal. 448, [156 Pac. 1023]: "This lease and agreement were given by the city as a means for improving the harbor of San Pedro, and facilitating navigation and commerce therefrom. The agreement provided that Miner and his successors should erect a seawall on the harbor-front line as soon as same was located by the federal government, should improve the same for purposes of navigation, should reserve a certain portion thereof to the city for a public harbor-front, should fill in and reclaim the land between said front and the shore, and dedicate appropriate parts thereof to public use for streets, and that he

and his successors should thereupon have . . . a lease thereof for the term of fifty years." Plaintiff entered upon said work as required by said lease and within the time therein provided made and constructed said improvements. In addition to said work of reclamation the lessee proceeded to build and construct bulkheads, warehouses, dry-docks, and other structures. The said wharf and warehouses were constructed as a necessary part of the reclamation and are imbedded in or permanently rest upon said land. For the years 1911 to 1914, inclusive, the city assessed, without further designation or segregation, all the "improvements" upon said leased tide-lands. For the recovery of the money so collected the first action herein was brought. The second action was to recover money paid as taxes upon an assessment as follows: "1915. Leasehold interest in tide lands, Val. $222,200, Tax $3198.78; two warehouses situated on tide lands, Val. $75,000, Tax $1080.02; 5200 feet of wharf situated on tide lands, Val. $195,000, Tax, $2807.26.   1916. Two warehouses situated on Tide Lands, Val. $75,000, Tax $855.00; 5200 feet wharf situated on Tide Lands, Val. $195,-000, Tax $2233.00." These taxes were paid involuntarily and under protest and to prevent a sale of plaintiff's property. Thereafter plaintiff presented to and filed with the city clerk of the city its claim, duly verified, demanding the repayment to it of said taxes. Said demand was thereafter rejected at a regular meeting of the city council of said city. Subsequently said actions were instituted for the recovery of said amounts. Demurrers to the said complaints were sustained by the court without leave to amend, and from the judgments rendered thereon the appeals were taken.

The first point made by appellant is that "Plaintiff's leasehold interest in said tide-lands was not and is not a property to be assessed or taxed and the assessment and collection of taxes against the same for the years 1915–16 were, and each thereof was, erroneous and illegal." In support of its position appellant cites *San Pedro etc. Ry. Co.* v. *City of Los Angeles,* 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071]. It was, indeed, in that case expressly held that "a leasehold is property under certain circumstances and for certain purposes, but it is not property for purposes of taxation under our revenue and fiscal laws, notwithstanding the fee is owned by the state and hence is not taxable."

But that decision was just as clearly and unequivocally over-ruled in *San Pedro etc. R. R. Co.* v. *City of Los Angeles,* 180 Cal. 18, [179 Pac. 393], wherein it is held that "Lease-hold interests in tide-lands belonging to the state are subject to taxation." That there might be no possible doubt of the effect of the later decision it was declared therein: "Upon the views thus expressed, it follows that the decision in 167 Cal. 425, [52 L. R. A. (N. S.) 991, 139 Pac. 1071], must be deemed overruled." **[1]** It is due, however, to the learned counsel for appellant to say that their opening brief was filed before said later decision was rendered. Respondent in its answering brief, having called attention to said case in 180 Cal., appellant takes this position: "We had a right to rely upon the declared law of the state at that time and we did rely upon that case as the law, and we paid the tax as in the case of any other erroneous and illegal assessment and collection of taxes, and to avoid a seizure and sale of our property and thereafter instituted proceedings to recover the same as provided by law. Our money and our right to recover our property became vested on the strength of the former ruling of the supreme court in effect at that time," and it is further declared that the former ruling in the San Pedro case was the declared law of the state for four years and was as effective as a statute. Hence, it is argued that the collection of said tax was unlawful and could not be validated by a subsequent decision to the contrary, any more than the operation of a statute in full force and effect would be nullified by a subsequent repeal. Before considering the citations, we may remark that if said decisions had been in the inverse order, if, for instance, in 1914 the supreme court had decided that such assessment was entirely legal, and in 1919 that it was illegal, appellant could hardly derive any comfort from the doctrine that a decision of the supreme court has the effect of a statute. However, as in two conflicting decisions the former must be deemed wrong, and the latter right, in the case suggested, appellant having paid the tax it would undoubtedly appear that, by reliance upon a wrong decision, appellant had been injured, and, therefore, having paid out money to which the tax collector was not entitled, in equity and good conscience the money should be refunded. But the case here is different, inasmuch as appellant paid to the tax collector what was due,

although the supreme court had held that it was not a legal tax. How can it be said that appellant was injured by doing right, although it was erroneously thought to be wrong?.

How does the question appear in the light of the cases cited by appellant? In *Kelley* v. *Rhoads*, 7 Wyo. 160, [75 Am. St. Rep. 904, 39 L. R. A. 594, 51 Pac. 593], it is said: "The effect of a decision of the supreme court construing a statute renders it the law for the time being as so construed. Parties have a right to act upon such a decision, and no injury ought to be allowed to result, by reason of a dependence thereon, if the decision is subsequently changed any more than in case of a repeal of a statute." But in that case the change in the decisions affected only the remedy to be pursued by the party claiming to have been illegally assessed. There was no conflict in the decisions as to the validity of the assessment and the claimant therein acted upon and in accordance with the earlier decision, whereas herein appellant acted contrary and in opposition to the earlier decision.

In *Taylor* v. *Ypsilanti*, 105 U. S. 60, [26 L. Ed. 1008, see, also, Rose's U. S. Notes], it is said: "The rights of the plaintiff, as the owner of bonds issued under a statute which, when passed, was valid by the laws of Michigan, as declared and acted upon by departments of its government, are not affected by decisions of the supreme court of the state rendered after the railroad company, to whose rights plaintiff succeeded, had earned the bonds under contract with the city, made in conformity with the statute." In that case it is clear that to have made the bonds subject to the later decision would have been to impair vested contract rights, and the supreme court properly followed its own adjudications in similar cases. It is not necessary to notice specifically the other decisions of the United States supreme court further than to quote from *Douglas* v. *Pike Co.*, 101 U. S. 687, [25 L. Ed. 968, see, also, Rose's U. S. Notes], the following clear statement of the generally recognized principle: "The true rule is to give a change of judicial construction in respect to a statute the same operation on contracts and existing contract rights that would be given to legislative amendment, that is to say, make it prospective but not retroactive. After a statute has been settled by judicial

construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment.''

The two California decisions, *In re Dorris*, 93 Cal. 612, [29 Pac. 224], and *Schoonover* v. *Birnbaum*, 148 Cal. 548, [83 Pac. 999], add nothing to the situation. They simply emphasize the reluctance of appellate tribunals to overrule former decisions when the effect would be to disturb and impair vested interests.

[2] But, as already intimated, we are not dealing with a case of contract, or contract rights acquired under the former decision. It is, rather, an instance of the payment of a just obligation to the government, although mistakenly supposed at the time to be unjust. Of course, if in such cases a decision of the supreme court is to have the full effect of a statute, the contention of appellant would be sound, but, as we understand it, that rule is to be applied only when considerations of justice and equity demand it. Such is not the case here.

It is perhaps unnecessary to add that if said decision in 167 Cal. had been rendered in this cause, it would, of course, constitute the law of the case and we would be bound by it, but since this is entirely different litigation, we are at liberty to apply the just and correct rule.

[3] Again, it is claimed that the "improvements" were improperly assessed, since they were exempt as a part of the realty. In response to the suggestion of respondent that the lease did not contain any agreement to that effect, or that they should become the property of the lessor, appellant points out that the complaints expressly allege that said improvements belong to the public and that, since it appears that the lessee affixed said improvements to the land of the lessor without any agreement permitting their removal, it follows as a matter of law, by virtue of section 1013 of the Civil Code, that the improvements belong to the owner of the land. The demurrer, of course, admits the facts as alleged, and we must, therefore, necessarily consider respondent as the owner of said improvements.

The question then arises whether they are assessable. That the land and the improvements are to be separately assessed for purposes of revenue is not disputed. The constitution of the state so provides (art. XIII, sec. 2), and the legislature and the courts have recognized the validity of such procedure. (*San Francisco* v. *McGinn*, 67 Cal. 110, [7 Pac. 187].) The separate assessment, however, cannot in the least affect the character of the improvements or their ownership. If they constitute real property the assessment does not and cannot convert them into personalty. If they belong to the public, they will remain so, notwithstanding they have been separately assessed. If the entire title to the improvements belongs to the state, they are not taxable at all any more than is the land itself. But, like the land, they are subject to a possessory right in a private person, while the fee is in the state. Such is the case here as disclosed by the complaint. [4] The land, and the improvements which have become a part of the land, to the extent of the reversionary interest or the fee, undoubtedly belonged to the public; but appellant had a possessory interest, the right to the use and occupation of the land and the improvements, and that was subject to taxation. This is made clear by a careful consideration of said decision in 180 Cal. and the cases therein cited. This possessory right, therefore, and no more, should have been assessed to appellant. Such was the course pursued as to the land itself, the assessment being against the "leasehold interest in tide-lands."

As to the improvements a similar situation exists as to the assessments for 1915 and 1916. It is true that the complaint alleged "That within the time provided by law, the assessor of the city of Los Angeles, without authority or right so to do did assess the said leasehold interest in said lands and the improvements on said leased land, above described, to this plaintiff, . . . at and for the following sums," etc. But when we turn to the exhibits attached to the complaint containing the demand that was made upon the treasury for the return of the money claimed to have been illegally exacted we find it recited by appellant that the assessment was made upon and against "the possessory interest of claimant in and to two warehouses" and "against and upon the possessory interest of claimant in and to five thousand two hundred feet of wharf," etc. While the ex-

press allegation of the complaint might leave the matter in doubt, therefore, whether it was the complete title or merely the possessory right that was assessed, taking in view the exhibits, we must conclude that the assessment was levied upon the interest that was subject to taxation, namely, the right to the possession and use of said improvements under the terms of said lease.

The case is different as to the assessments for the earlier years. The allegation as to 1911 is, "the assessor of the city of Los Angeles, without authority or right so to do, did assess the said improvements on said leased land above described, under the designation of 'improvements on leased land' to the plaintiff." The allegations are similar as to 1912, 1913, and 1914. The claims presented to the treasurer also recite that said taxes were levied and assessed against "said improvements on said leased tide-lands." It cannot be doubted that such assessment covers the entire title and interest in and to said improvements. If there had been a similar assessment of the land no one would dispute that it included the entire interest. If the leasehold or possessory right alone had been intended, it should have been so designated. The reversionary interest, however, both in the land and the improvements was not subject to taxation, and since the assessment of the improvements included this interest and is indivisible, it is difficult to see how it can be sustained.

Respondent, though, claims that the decision in 67 Cal. is to the contrary. Therein it was said: "It is not necessary to follow and answer in detail the various reasons given by defendant why he should not be held liable; it is sufficient to say that, for the purposes of revenue, the legislature of this state has observed a distinction between real estate and improvements, and that distinction has been recognized by this court. . . . We are of opinion that, for the purposes of revenue, the defendant was the owner of the property assessed and that he is liable for the taxes." But in that case attention was not directed to the distinction between the possessory right and the title to the improvements. Indeed, it was claimed by the city that McGinn was the owner of said improvements and entitled to remove them, and it was so found by the trial court. While ownership was denied by him, yet his counsel in their opening

brief filed in the supreme court declared: "There is no admission that the improvements belong to defendant, but that proposition is *immaterial* under the statutes," the main contention being that under the contract of the parties the city was obligated to pay the taxes.

A recent decision upon the subject is the case of *City of Oakland* v. *Albers Bros. Milling Co.*, 43 Cal. App. 191, [184 Pac. 868], wherein it was held that improvements erected by the lessee upon land belonging to the public were not subject to taxation. It is true that in the lease therein it was expressly provided that the improvements should be the property of the city while herein a similar result is affected by operation of the statute. The material fact, though, appears to be the same, that is, that the improvements belonged to the public. In that case, as in this, the assessment was to the lessee upon "the buildings and improvements as improvements on leased land." An examination of the briefs in that case discloses that the attention of the appellate court was called to the fact that "a tax on the leasehold interest of the defendant or on its beneficial use of the property of the plaintiff (either land or improvements), is not the subject of this controversy."

It was also emphasized in the briefs for respondent that in the McGinn case the trial court had found that the improvements therein belonged to McGinn, and the supreme court seemed satisfied with that finding. If the improvements belonged to McGinn, of course, they were taxable, and the conclusion of the supreme court based upon that premise is unassailable.

[5] But section 3804 of the Political Code, under which these actions were brought, provides that "no order for the refund of taxes, penalties or costs under this section shall be made except upon a verified claim therefor . . . which said claim must be filed within three years after the making of the payment sought to be refunded." It appears from the complaint herein that the claims for the repayment of the taxes for 1911 and 1912 were not filed within said three years, and hence as to those amounts the demurrer was properly sustained. The same objection does not apply to 1913 and 1914, but respondent contends that the whole action is barred by reason of section 3819 of the Political Code, providing that one claiming his assessment to be void "may,

at any time within six months after such payment, bring action against the county in the superior court to recover back the tax so paid under protest." But it was held by the supreme court in *Stewart Law & Collection Co.* v. *Alameda County*, 142 Cal. 660, [76 Pac. 481], that said section and section 3804 of the same code afford concurrent remedies, and that, in accordance with the latter, the action may be brought within three years after the payment.

[6] Another important contention of appellant is that the municipality was estopped from levying this tax. The theory is based upon the fact that in August, 1911, the city commenced a suit against the company to quiet title to and to obtain possession of said property, averring in the complaint that said city was the owner and entitled to the possession of the property and that the defendant had no interest therein or right to the possession thereof; that the trial of said action was had in the superior court in June, 1915, and that the decision of said court was in favor of said city as to a large portion of said property; "that, because of said claims of said city of Los Angeles to said property, and because of said litigation affecting the same, brought and instituted by the city of Los Angeles against this plaintiff, and still pending, said plaintiff has suffered great loss and damage in its possession thereof and in its operations thereon, and said property has been thereby at all of said dates and times herein mentioned, and still is, greatly depreciated in value, and rendered practically of no value for sale, rental or any other purpose, and should it be held by this honorable court that said property hereinabove described, or any part thereof, is or was, at any of the dates and times herein mentioned, taxable as against this plaintiff, plaintiff alleges that the assessed valuation placed thereon by said city assessor, as aforesaid, was and is greatly inflated and in excess of its said value, or any reasonable value, and that said value, if such or any assessment was or is lawful, should not be, nor should it be upon the whole thereof, fixed at more than the sum of $100,000." In support of its claim appellant cites *Moore* v. *Morledge*, 42 Iowa, 26; *Iowa R. Land Co.* v. *Story Co.*, 36 Iowa, 48; *Calhoun County* v. *American Emigrant Co.*, 93 U. S. 124, [23 L. Ed. 826, see, also, Rose's U. S. Notes].

In the first of these the county was under obligation to convey the lands to the railroad company, but it refused to do so and in the meantime, and while the county was thus refusing to convey said lands to the railroad company, and was itself holding the title and denying the claim of the railroad company to it, the said county caused said lands to be taxed and afterward caused the same to be sold for such taxes. It was in view of this situation that the supreme court of Iowa said: "Under these facts we do not stop to inquire what would be the rule respecting liability for taxes, as between vendor and purchaser, in cases where the latter, by performance of his contract, has become the owner, though the legal title is in the former, because we grounded our support of the plaintiff's case upon this plain rule of fair dealing and the broad principle of equity, that a party shall not wrongfully withhold the title to property and the benefits of ownership thereof from one entitled thereto and at the same time subject the property to burdens for the benefit of the party thus wrongfully withholding the title. In other words, the county having, during those years, denied the right and title under which the plaintiff claims, is now equitably estopped from asserting that it then had the title."

The later case from Iowa involved similar facts and the supreme court based its decision upon the ruling in *Iowa R. Land Co.* v. *Story Co.*, 36 Iowa, 48.

In the County of Calhoun case, *supra,* the county in levying the tax violated its stipulation and agreement that the property should not be assessed, and in view of the bad faith of the county the supreme court of the United States deemed it proper to say: "Corporations, quite as much as individuals, are held to a careful adherence to truth and uprightness in their dealings with other parties; nor can they be permitted, with impunity, to involve others in onerous obligations, by their misrepresentations or concealments, without being held to just responsibility for the consequences of their misconduct or bad faith."

In those cases, it is to be observed, that a degree of perfidy characterized the conduct of the taxing power, and that the burden was *wrongfully* and *unjustly* imposed; whereas, in the case at bar, there is no suggestion of *mala fides* or oppression. We must assume that there was an honest differ-

ence of opinion as to whether appellant was entitled longer to remain in possession of the property, and we must remember that appellant actually did remain in possession all these years and enjoyed the fruits of its claim. This possessory right was subject to assessment, and while it was actually enjoyed by appellant, we can see no injustice in requiring the payment of the tax. The situation is somewhat like that of *American Emigrant Co.* v. *Iowa R. Land Co.*, 52 Iowa, 323, [3 N. W. 88]. Therein, after referring to certain decisions, including two of those cited by appellant herein, it is said: "We are now asked to go a step further, and hold, if the county brings an action to set aside a conveyance alleged to have been obtained by fraud, that it is estopped from levying taxes on the land conveyed. The proposition amounts to this: That if the county seeks to set aside the conveyance it is estopped therein by a levy of taxes and if it levies taxes it is estopped from bringing an action to set aside the conveyance. We do not believe the estoppel should work both ways. Under the circumstances the county had done all it contracted to do. It never agreed not to bring an action to set aside the conveyance on the ground of fraud. The intervener received the conveyance subject to this contingency. The lands were therefore taxable."

Of course, if there had been a final judgment in this case or if appellant had been deprived of the use and enjoyment of the property before the assessment was levied, we would have a different situation. But no judgment has been rendered and appellant has remained in possession. [7] There is an allegation, it is true, that the value of appellant's interest has greatly depreciated in consequence of said litigation, but manifestly, this was a consideration to be presented to the board of equalization. When a party believes that his property has been unduly assessed, in order to obtain relief, he must make application to the tribunal created for that purpose. (*Fall* v. *City of Marysville,* 19 Cal. 391.) There is no pretense that such course was pursued herein.

[8] It may be added that the doctrine of estoppel is not to be lightly invoked against the exercise of the sovereign power of the state to levy and collect taxes for the support of the government. This authority is so important and commanding that, assuredly, it cannot be successfully chal-

lenged upon the showing made herein. There may be instances of such gross injustice, as suggested by the decision cited, wherein it would be proper to say that the government is estopped to claim a tax, but, ordinarily, where a mistake is made in the assessment or levy or an unjust burden has been imposed, the aggrieved party, in order to obtain relief, must pursue the remedy provided by the statute.

We think the judgment in the case "No. B 52,531" is correct and should be affirmed; that the judgment in "No. B 38,539" is erroneous as to the assessments for 1913 and 1914, and that the complaint states a cause of action to recover the same, and that said judgment should be reversed and such further action taken as herein indicated.

It is so ordered.

Hart, J., and Nicol, P. J., *pro tem.*, concurred.