RELIANCE MANUFACTURING COMPANY *v.*
BARR, CHAIRMAN, STATE TAX COMMISSION

No. 42455 November 5, 1962 146 So. 2d 569

*Tighe & Tighe,* Jackson, for appellant.

*John E. Stone,* Jackson, for appellee.

90

RODGERS, J.

This is an appeal by Reliance Manufacturing Company, a foreign corporation, (taxpayer), doing business in the State of Mississippi, from a final decree of the Chancery Court of the First Judicial District of Hinds County, Mississippi, wherein the chancellor sustained a motion of the appellee to suppress the evidence of appellant, and entered a final decree in favor of defendant, Chairman of the State Tax Commission.

Appellant filed a petition in the chancery court complaining of the action of the Chairman of the State Tax Commission in assessing additional income franchise taxes against appellant, and asked that the additional assessment be set aside and cancelled. Appellant, Reliance Manufacturing Company, is engaged in the manufacture of boys' and men's clothing, in several states, and has now in operation nine plants in Mississippi. Appellant alleged in its petition that it had filed income tax returns for the years 1957 through 1960; that petitioner had also filed franchise tax returns for the years 1958 through 1961, and had paid all taxes due thereon. It is further alleged that appellant had computed its income and franchise tax returns by the use of ''the manufacturer's formula'' as prescribed by Art. 247 of the Income Tax Regulations, 11 and 12, for the years above-detailed. It is charged that the formula used required appellant to compute its income in the State of Mississippi by obtaining an arithmetical average for each of the three factors in the formula, namely, ''property'', ''payroll'' and ''sales.'' Each of these factors was used as a ratio of the total income earned in Mississippi as

compared to the total income earned in appellant's entire operation. The arithmetical average is then applied to appellant's unitary net income to obtain that portion of such income as is properly attributable to the State of Mississippi for income and franchise tax purposes. It is alleged that the appellee has caused assessments totaling $12,298.62, plus interest to be made against appellant; that the method of making the reports filed by appellant was correct and the assessments against appellant are void, unreasonable and arbitrary, and are based on a wholly incorrect interpretation of the income tax regulations. It is charged that the only issue with reference to the franchise tax assessment is presented by an interpretation of the income formula which it had employed; and that the additional franchise tax claimed is based solely upon the increase in the income of appellant after assessment by appellee, so that a determination of appellant's net income will determine the franchise tax due.

After appellee had filed its answer to the interrogatories propounded to it and its answer to the petition, appellant filed an amendment to the original petition. It charged that if appellee were correct in its interpretation of Art. 247, Regulations 11 and 12, that appellant was being denied due process and equal protection of the law; because such interpretation and resulting assessment would, in effect, be tentamount to extra-territorial taxation.

Appellee, State Tax Commission, filed its answer admitting that it had assessed taxes alleged by appellant for the years set out in the petition, but denied that (1) such assessment was void, unreasonable or arbitrary, (2) the prior actions of appellee, officials of the State Tax Commission, and acts of prior tax commissioners operated as a waiver and estoppel so as to prevent collection of taxes assessed; and (3) that the making of the assessment was an unconstitutional act on the part

of appellee, or, in the alternative, the provisions of the income tax regulation, here involved, are unconstitutional.

■■ ■ One of the provisions of the Income Tax Law of Mississippi — Sec. 9220-12, (1), (c), Miss. Code of 1942 — deals with ''gross income derived from sources partly within and partly without the state'' and in determining the portion of such taxable income attributable to sources within the State, the tax may be determined by process of a formula of general apportionment prescribed by the Commission, with the approval of the Governor. In accordance with the Act of the Legislature, as expressed in the foregoing Code section, the Chairman of the State Tax Commission adopted, with the approval of the Governor, Art. 247. The language of Art. 247 has remained the same in all regulations promulgated by the Commissioner since its adoption. The regulations adopted by Commissioners since the initial Art. 247 are Nos. 8, 9, 10, 11 and 12, the latter two regulations being applicable to the income tax returns of appellant for the years 1957 through 1960. These two regulations are the subject of the litigation in this case.

The pertinent part of Art. 247, Regulations 11 and 12, is in the following language:

''Manufacturers — Manufacturers shall apportion a part of their unitary net income to this State by the use of a ratio which shall be the arithmetical average of the following three ratios: (1) Manufacturing assets owned or used in Mississippi to total manufacturing assets. (2) Mississippi manufacturing labor to total manufacturing labor. (3) Mississippi sales to total sales.

''Property — The first factor of the formula includes land, buildings, machinery, equipment, and other tangible personal property actually used, whether owned or rented, in manufacturing or producing the articles or commodities manufactured.''

The issue to be determined by this Court is whether or not the taxpayer, under the regulations, supra, could properly use its total capital assets in determination of its income tax liability to the State of Mississippi, or whether or not the taxpayer was restricted to ''property actually used — in manufacturing or producing articles or commodities manufactured.''

Appellant contends that it had a right to use the value of all of its property in determining its taxable income because all of its property is said to have been used in producing the income. It presented evidence in the trial court to establish this thesis. Testimony showed that the manufacturing function of the garment business is set up on the basis of what appellant's president called ''M. P. S.'', or merchandising, production and sales. Appellant considered ''production'' a separate function in the business of manufacturing garments. Testimony further reveals that since appellant had begun operation within Mississippi, the ownership of the company had changed hands, and appellant had absorbed Rice-Stix, Inc., a competitive garment manufacturing company, together with its plants located within and without Mississippi. It further appears that appellant now owns manufacturing plants which are not in operation, warehouses, automobiles and personal property which are not ''actually used in the manufacturing or producing the articles or commodities manufactured.''

The contention of appellant is to the effect that since it owns idle plants and warehouses where its products are stored, together with automobiles used by its personnel, it is necessary to recoup the cost, insurance, and maintenance on this property from the proceeds of the sale of its product, and therefore these assets should be used in determining the manufacturing assets under the property factor of the formula. The fallacy of this argument is readily observed when we consider that manufacturing companies could easily become holding com-

panies and claim idle property as part of the manufacturing assets for the purpose of determining taxable income.

I

Many definitions of "manufacturing" may be found in Words & Phrases, Vol. 26, p. 679, which are similar to the definition this Court used in the case of State v. J. J. Newman Lbr. Co., 102 Miss. 802, 59 So. 923, in which the Court said: "It will be seen, therefore, that appellee's enterprise included both manufacturing and repairing in its work. A reasonable definition may be given to 'manufacturing' (Century Dictionary) as the system of industry which produces manufactured articles, and to 'manufacture' as the production of articles for use from raw or prepared materials, by giving to these materials new forms, qualities, and properties, or combinations, whether by hand labor or machinery, used more especially of production in a large way by machinery, or many hands working co-operatively." Cf. East Texas Lines v. Frozen Foods Express, et al., 351 U. S. 49, 100 L. Ed. 917, 923, 76 S. Ct. 574; Commonwealth v. McCrady-Rodgers Co., 174 A. 395, 316 Pa. 155. See also Commissioner of Corporations and Taxation, et al. v. Assessors of Boston, 321 Mass. 90, 71 N. E. 2d 874, in which the Court differentiated between manufacturing and sale of articles in the same business.

Cases cited by appellant on the definition of "manufacture" have to do with statutes or ordinances exempting machinery used in manufacturing of products, or articles exempt from taxation, or articles manufactured and sold within the city as expressly exempt from taxation in each particular ordinance or statute. Each case is based upon the wording and meaning of the local ordinance or statute on which tax exemption is claimed.

It will be observed that Art. 247 here involved deals with "taxable net income of foreign corporation and non-residents", "computation of unitary net income" and

"apportionment of unitary net income." It separates the various elements of what otherwise is an operation with only one purpose, that of making and marketing that particular product.

We have come to the conclusion that the first factor under the formula set out in Art. 247, Regulations 11 and 12, of the Income Tax Division of the State Tax Commission, namely: "(1) Manufacturing Assets owned or used in Mississippi to total manufacturing assets" — is controlled by the definition of "property" in the next paragraph of this Article, and means tangible property "actually used" in the manufacture or production of the articles or commodities manufactured. We believe, therefore, the chancellor was correct in holding that the "property factor" of the apportionment formula restricted the use of appellant's assets to the property "actually used" in the manufacturing of its products rather than "total assets" of the company.

## II

Appellant next contends that the State Tax Commission, as the taxing authority, and the Commissioner, are estopped to maintain the income and franchise tax assessments here charged, because of the prior acts of appellee, officials of the State Tax Commission and Commissioners — have operated as a waiver and estoppel against appellee, and bar the assessments here imposed against appellant-taxpayer.

Testimony was offered by appellant to establish his claim that prior acts of the Tax Commissioners have waived the collection of taxes here sought. Testimony tended to show that officers of the Tax Commission examined the tax returns of appellant in 1946 and again in 1954. It appears that attorney for appellant and one of its officers met the Tax Commissioner and some of the heads of the Income Tax Department and that a memorandum of this meeting was shown upon the

minutes of the Tax Commission. A committee was appointed to study the problem, and continued correspondence was had between appellant's attorney and some of the officials of the tax department. It further appears that there was a second meeting on July 3, 1946, and a memorandum was made of the letter from the Attorney General's Office, with reference to a formula for the collection of taxes from a taxpayer doing business within and without the State. It further appears that thereafter the above-mentioned Art. 247 was adopted, and there was no disagreement between the taxpayer and appellee, on the property factor or formula shown in appellant's tax return although there were other disagreements. Appellant was required to take out of the labor factor certain labor costs. Letters were introduced in evidence by appellant's attorney and replies from the Chief of the Division of Income Tax. Some phrases and sentences found in these letters were pointed out by appellant as proof that there was a special agreement with the Tax Commission to include all of its property assets in the property factor in the tax formula. It is also emphasized that under the minutes of the Tax Commission the Chief of the Income Tax Division was vested with authority to approve "the company's" formula (meaning Art. 247) as interpreted by it. Testimony further shows that there was another disagreement and lawsuit between the taxpayer with reference to appellant's 1956 tax return, which resulted in a judgment in favor of appellant. See Monaghan, State Tax Collector v. Reliance Mfg. Co., 236 Miss. 462, 111 So. 2d 225. Testimony further shows that during all of the discussions with the officers of the Tax Commission, and during the litigation with reference to appellant's tax return, nothing was said about the fact that it was obviously using the total value of its property in computing its "manufacturing assets", in arriving at the per-

centage ratio under the property factor of the formula set out in Art. 247.

Andrew G. Haerb, Vice President of appellant's company, testified with reference to the expansion of the company. This expansion was made after he received the letter from Henry Eason, on which appellant largely depends to establish its claim of an estoppel against the Mississippi State Tax Commission. His testimony is as follows: Q. "Do you know whether or not that (conference with taxing authorities) played any part in the Company's plans to make this expansion in the State of Mississippi?" A. "Well, I've always felt that these matters were satisfactorily resolved, because we elected to proceed with the construction of a 125,000 square foot warehouse under the Mississippi B. A. W. I. Program to further the expansion and to self-contain the shipping functions and clerical functions of the operation, so our expansion continued after the problems that might have perhaps resulted in a different decision were favorably determined." * * * Q. "Do you know whether or not the tax considerations of the Company played any part in these expansions that you just mentioned?" A. "Well, as I stated previously, I know that they were taken under consideration before we proceeded with the major construction facilities and the expansion of re-tooling, which was quite expensive in some of these plants. For example, in 1953 and 1954 I think our re-engineering and re-tooling expense exceeded a million dollars in the State of Mississippi."

Petitioner argues, in effect, that even though this Court should hold that the "property factor" restricts its "manufacturing assets" to property "actually used" in the manufacturing of its products, nevertheless, the Chairman of the State Tax Commission cannot now claim taxes for the years above set out, because the Tax Commission is estopped to do so.

An estoppel is an ancient common-law defense. Lord Coke pointed out that the plea was called estoppel "because a man's own act or acceptance stoppeth or closeth up his mouth to alleage or plead the truth." 31 C. J. S., Estoppel, Sec. 1, p. 192. The modern definition of an estoppel is said to be: "The preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question.

"A preclusion, in law, which prevents a man from alleging or denying a fact, in consequence of his own previous act, allegation, or denial of a contrary tenor." Bouvier's Law Dictionary, 1929 Ed., p. 365. See also Plant Flour Mills Company v. Sanders & Ellis, 172 Miss. 539, 157 So. 713.

 █ It is generally recognized, as pointed out in appellant's brief, that the unauthorized acts of one of its officials does not estop the United States, a state, or a municipality acting in its sovereign or governmental capacity. 31 C. J. S., Estoppel, Sec. 140, p. 411; 19 Am. Jur., Estoppel, Sec. 166, p. 818. This Court has followed this rule for many years. See Eastman Oil Mills v. State, ex rel., Roberson, Atty. Gen., 130 Miss. 63, 93 So. 484; Gift v. Love, Supt. of Banks, 164 Miss. 442, 144 So. 562, 86 A. L. R. 63; American Oil Company v. Marion County, 187 Miss. 148, 192 So. 296; Colle Towing Company v. Harrison County, 213 Miss. 442, 57 So. 2d 171; Brown v. City of Gulfport, 213 Miss. 457, 57 So. 2d 290.

The authorities hold generally, however, that the defense of equitable estoppel may apply to a state "in a proper case." Courts have not attempted to define what is meant by the phrase "in a proper case", and it has been pointed out that it is better that each case be controlled by its own facts. 31 C. J. S., Estoppel, supra. In the case of Witherspoon v. City of Meridian, 69 Miss.

288, 13 So. 843, this Court said: "* * * we are not willing to declare against the doctrine of equitable estoppel as applied to protect individuals against municipal claims under some circumstances. There may be cases where we would not hesitate to use the beneficent doctrine of estoppel in pais against a municipality. We can imagine such a case, but this is not one."

Appellant argues that this "is a proper case" for the application of the equitable estoppel doctrine because the State Tax Commissioner had discretion to vary or modify the factors of any apportionment prescribed formula to suit a particular or peculiar circumstance of any taxpayer.

We do not believe the authorities cited by appellant with reference to discretion of administrative boards apply in this case. First, because the collection of taxes is a public or governmental function, and the State cannot be estopped from performing a governmental function. 31 C. J. S., Estoppel, Sec. 147, p. 433; Outer Harbor Dock & Wharf Company v. City of Los Angeles, 49 CA 120, 193 P. 137 (Calif.); Jessup v. State, 215 Ga. 771, 113 S. E. 2d 390; Bennetts, Inc. v. Carpenter, 111 Col. 63, 137 P. 2d 780 (1932); Claiborne Sales Co., Inc. v. Collector of Revenue, 99 So. 2d 345 (La. 1958); La Societe Francaise De Bienfaisance Mutuellee v. California Employment Commission, 56 Calif. App. 2d 534, 133 P. 2d 47; Clare v. Bell, 378 Ill. 128, 37 N. E. 2d 812; Lovett, et al. v. City Treasurer of Detroit, et al., 286 Mich 159, 281 N. W. 576.

Second, there is no proof in the record that the Governor approved a change of Art. 247, Regulations 11 and 12, to suit the particular or peculiar circumstances of appellant. The State Tax Commissioner is charged with the administration and enforcement of the provisions of the law and can only make such rules and regulations as are not inconsistent with the law, with the approval

of the Governor. Secs. 9220-02, 9220-32, 9220-33, Miss. Code of 1942, Recompiled.

 Third, the fact that taxes due by appellant under the tax formula established by the State Tax Commission for the apportionment of taxes went unnoticed and were unpaid for several years did not exempt them from paying the proper amount due the State. See Monaghan, Chairman State Tax Commission v. Jackson Casket Co., 242 Miss. 840, 136 So. 2d 603.

 Finally, the testimony of Mr. Haerb, together with inferences drawn from other testimony is not sufficient to establish that appellant relied on the letters, conferences and communications, had with officials of the State Tax Commission to such an extent as to have caused appellant to have changed its situation to its injury and prejudice. It has been repeatedly held by this Court that an estoppel operates only in favor of one who, in reliance upon an act, representation, or silence of another, so changes his situation that injury would result if the truth were shown. Davis v. Butler, 128 Miss. 847, 91 So. 279, 91 So. 709; Day v. McCandless, 167 Miss. 832, 142 So. 486; Citizens Bank of Hattiesburg v. Miller, 194 Miss. 557, 11 So. 2d 457; Gulf Refining Company v. Travis, 201 Miss. 336, 29 So. 2d 100, 30 So. 2d 398; Crooker v. Hollingsworth, 210 Miss. 636, 46 So. 2d 541, 50 So. 2d 355.

The chancellor was correct, both as to law and facts, in holding that an estoppel did not operate against the State Tax Commission to prevent it from collecting taxes properly due the State under a tax formula adopted by the State Tax Commissioner and approved by the Governor.

## III

The last point argued by appellant that the assessment here involved was an unconstitutional exercise of power, or the provisions of the income tax regulation under

which assessment was made is unconstitutional because the tax regulation and formula here used assesses taxes against property extra-territorially.

The burden of proof is upon one who attacks a tax formula of apportionment to show that it taxes extra-territorial values. See Butler Brothers v. McColgan, 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991; McWilliams Dredging Company v. McKeigney, Chairman, State Tax Com., 227 Miss. 730, 86 So. 2d 672; Stapling Machines Company v. Monaghan, Chairman, State Tax Commission, 232 Miss. 484, 99 So. 2d 649; Miss. State Tax Commission v. Tenn. Gas Transmission Co., 239 Miss. 191, 116 So. 2d 550; State of North Carolina, ex rel., A. J. Maxwell, Com. of Revenue v. Kent-Coffey Mfg Co., 204 N. C. 365, 168 S. E. 397, 90 A. L. R. 476.

After a careful examination of the petition, exhibits, evidence, and the law and regulations under which this assessment is made, it is our opinion that the assessment is neither unreasonable nor arbitrary; neither do we believe appellant has met the burden of showing that the formula established for the purpose of determining the unitary net income tax for manufacturing companies, doing business within and without the State, results in taxing assets outside the State.

We therefore conclude that the chancellor was correct in striking testimony offered by appellant and in rendering a decree in favor of appellee. Judgment of the Chancery Court is affirmed, to which legal interest will be added.

Affirmed.

*McGehee, C. J., and Gillespie, McElroy and Jones, JJ.,* concur.