## STATE OF KANSAS

### JANUARY TERM, 1920

PRESENT:

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. SILAS W. PORTER,
HON. JUDSON S. WEST,       JUSTICES.
HON. JOHN MARSHALL,
HON. JOHN S. DAWSON,

No. 22,932.

L. A. GOLDEN, *Plaintiff*, v. W. R. MITCHELL, as Judge of the District Court of Smith County, *Defendant*.

SYLLABUS BY THE COURT.

1. JUDGE PRO TEMPORE—*Powers and Jurisdiction Terminated by Qualification of Newly Appointed Judge.* When a district judge resigns and his successor has been appointed and has qualified, the judicial powers of a judge *pro tempore* who served as a substitute for the retiring judge are terminated, and he has no further authority to act except by agreement of parties or by general acquiescence.

2. SAME—*Judicial Powers Not Delegated by Telephone.* A request by telephone, made by a newly appointed district judge, that a person who served as judge *pro tempore* for his retiring predecessor continue to act as judge *pro tempore* for a short time, conferred no authority upon the person who assumed to exercise judicial powers because of such request.

3. SAME. Except as defined and limited by law, judicial powers and duties cannot be delegated. They must be personally discharged by the lawful holder of the judicial office.

4. SAME—*De Facto Officer.* A person who assumes without authority to exercise official powers does not become an officer *de facto* if his authority to exercise such powers is promptly challenged.

5. MANDAMUS—*Newly Appointed Judge—Should Hear Motion for New Trial.* Where a district judge declines to hear, consider, and determine a motion for a new trial on the mistaken ground that he is altogether without jurisdiction to do so, mandamus is a proper remedy, and a writ will issue at the instance of the party aggrieved thereby.

Original proceeding in mandamus.    Opinion filed June 3, 1920.    Writ allowed.

*F. W. Mahin, W. E. Mahin, E. S. Rice, W. S. Rice,* all of Smith Center, and *Fred Robertson,* of Kansas City, for the plaintiff.

*R. W. Turner, D. F. Stanley,* both of Mankato, *R. W. Relihan,* and *T. D. Relihan,* both of Smith Center, for the defendant.

The opinion of the court was delivered by

DAWSON, J.:   The plaintiff asks for a writ of mandamus directing the recently appointed judge of the fifteenth judicial district to hear, consider and determine on its merits the plaintiff's motion for a new trial in a case which was tried prior to defendant's appointment.

During the year 1919, the regular district judge, Hon. R. M. Pickler, who had presided for many years in that district (Smith and other counties), suffered from inpaired health, and some time late in that year, Charles L. Kagey, Esquire, a Beloit lawyer, was elected judge *pro tempore* in Smith county. Some time in December, a case entitled *L. A. Golden v. C. P. Curtis* came on for trial before Kagey as judge *pro tem.*   On December 31, 1919, the jury returned a verdict for Curtis. Meantime, Judge Pickler had sent his resignation as district judge to. the governor, and on January 1, 1920, the governor appointed the present defendant, Honorable W. R. Mitchell, as Judge Pickler's successor, and Judge Mitchell took the oath of office and qualified the same day.

Within due time Golden filed his motion for a new trial, and when court convened in Smith county on January 5, 1920, the new judge failed to appear on account of sickness; and under supervision of the clerk of the court, the members of the bar set about the selection of a judge *pro tem.*   About the same time, C. L. Kagey, who had served as judge *pro tem.* for Judge Pickler, took the bench and assumed to hold court, to which

assumption Golden's attorneys promptly and vigorously ob-
jected. They also informed Kagey that an application had
been filed with the clerk requesting the election of a judge *pro
tem.* to act in the absence of Judge Mitchell.

To justify his continued exercise of judicial functions, Kagey
said:

"The court will say that it was his intention to adjourn court *sine die*
on December 31st, 1919, but on the afternoon of said day Honorable W. R.
Mitchell, the duly appointed judge of this district, called the judge *pro
tem.* on the telephone and stated to him that it was his desire that the
judge *pro tem.* should not adjourn court, *sine die,* but should adjourn it
subject to call, as he, the district judge, appointed, was unable on account
of physical disability to go to Smith Center to hold court, and said dis-
trict judge requested the judge *pro tem.* as a favor to him, to hold court
one day this week if possible, for the purpose of hearing and determining
any motions for new trials or other unfinished matters, and although such
an arrangement was inconvenient for the judge *pro tem.,* he consented to
do so, and on the evening of December 31st, 1919, he adjourned the dis-
trict court of Smith county, Kansas, subject to call, and informed all of
the attorneys interested that court would probably sit the following Mon-
day, that is on January 5th, 1920, for the purpose of closing up all un-
finished business."

As counsel for Golden persisted in their objection to Kagey's
exercise of judicial powers and insisted on the selection of a
judge *pro tem.* as a substitute for Judge Mitchell, Kagey caused
a record to be made that the motion for a new trial in *Golden
v. Curtis* was overruled "for want of prosecution."

Counsel for Golden:

"We ask that the record show that it wasn't for want of prosecution,
but because the question was raised as to the jurisdiction of the court,
and that the attorneys refused to present the motions on account of such
authority being questioned."

Thereupon the following dialogue occurred:

"C. L. Kagey: The record will show, Mr. Mahin, that the court re-
quested you to take up these motions and that you refused to do so, and
the court thereupon proceeded to overrule them.

"W. E. Mahin: We wish the record to show the truth.

"C. L. Kagey: The record shows the truth.

"C. L. Kagey: There being no other business, the court thereupon
adjourned *sine die.*"

By the time these incidents had transpired, a member of the
local bar had been elected judge *pro tem.;* and he took the
bench, and continued for thirty days the motion for a new trial

in *Golden v. Curtis,* and made some further orders not here pertinent.

On February 6, 1920, upon notice to Curtis, Golden presented to Judge W. R. Mitchell, at chambers, his motion for a new trial. Judge Mitchell declined to hear the motion, declined to consider it, and declined to rule on it, on the ground that "he considered himself without jurisdiction in the premises one way or the other."

Hence this lawsuit.

An alternative writ being issued by this court, the defendant moves that it be quashed—

"For the reason that all of the alleged grievances contained in the motion for said alternative writ and the writ itself, shows: That each and all of said orders and matters and that order made by the judge at chambers on the 6th day of February, 1920, are orders that in their nature are final and for which the remedy, if any, is by appeal."

This motion to quash the writ must be denied. Mr. Kagey was selected judge *pro tem.* as a substitute for Judge R. M. Pickler. When Judge Pickler resigned and the governor had accepted his resignation and had appointed Mitchell as his successor, and when the latter had been sworn in as the new district judge, Kagey's *pro tempore* judgeship expired. He was a substitute for Judge Pickler. (*Keys v. Keys,* 83 Kan. 92, 95, 109 Pac. 985.) When Judge Pickler retired from office, there could be no official substitute for him, and no excuse for a substitute. (*Cox v. The State, ex rel.,* 30 Kan. 202, 2 Pac. 155; 23 Cyc. 506.) The new judge was in full charge of the judicial business of the district court of Smith county. If the new judge found it inconvenient or impossible to be present to discharge his judicial functions, the matter of a judge *pro tempore* might have been arranged *by agreement of counsel* (*The State v. Keehn,* 85 Kan. 765, 118 Pac. 851; *Bank v. Courter,* 97 Kan. 178, 183, 155 Pac. 27), or by formal compliance with the provisions of law for the selection of a judge *pro tempore.*

It hardly needs to be declared that the telephone conversation between Judge Mitchell and C. L. Kagey conferred no judicial powers on the latter. A judge is not one of those fortunate public officials who can deputize another person to perform his official duties for him. (*In re Millington, Petitioner, etc.,* 24 Kan. 214, 224.) Sometimes his judicial burdens may be lightened by agreement of counsel that another lawyer or

judge may sit for him, sometimes by the selection of a judge *pro tempore* in accordance with the statutes, and sometimes by reference of certain matters to a referee, all of which must also be done in conformity with the statute. But aside from such exceptions, a judge's powers and duties cannot be delegated. (Throop on Public Officers, §§ 569, 570.)

If an occupant of a judicial office, as in other cases, be permitted to occupy such office for some considerable time, without serious question, such occupant of the judicial office may become a *de facto* judge (23 Cyc. 619) until the state or some person having a lawful right to the office sees fit to challenge his authority. That is not out of any regard for the usurping occupant, but for the protection of the public who deal with him as a lawful functionary. (Throop on Public Officers, §§ 622-628; Mechem's Public Offices and Officers, §§ 315-321.) But where the illegal assumption of official powers is promptly challenged, as was done by Golden, the rule as to *de facto* officers does not apply.

Next, as to plaintiff's right to redress by mandamus: It is usually the case that an erroneous ruling of a trial court or judge can be adequately redressed and corrected by appeal; but in a case like this, where the aggrieved party cannot have an unrestricted appeal, as the statute permits, until he has sincerely urged his motion for a new trial before a lawful trial court or judge, and until a lawful and binding ruling has been obtained thereon, there seems to be no other adequate redress than that accorded by mandamus. In the Bleakley case, where the trial court had refused to act on a motion for a new trial, as a sort of disciplinary measure against Mrs. Bleakley for taking and keeping her "incubator" baby outside the trial court's jurisdiction, this court held that it was "the duty of the court below to rule upon the motion for a new trial by either granting or denying it." (*Bleakley v. Smart,* 74 Kan. 476, 486, 87 Pac. 76.)

(See, also, *Munkers v. Watson, Judge, etc.,* 9 Kan. 668; *Duffitt & Ransey v. Crozier, Judge,* 30 Kan. 150, 1 Pac. 69; *The State, ex rel., v. Webb, Judge,* 34 Kan. 710, 9 Pac. 770; *Bird v. Gilbert,* 40 Kan. 469, 19 Pac. 924; *City of Emporia v. Randolph,* 56 Kan. 117, 42 Pac. 376; Note, 4 A. L. R. 582.)

While a failure to procure a ruling on a motion for a new trial is not altogether fatal, it does greatly restrict the scope of

the appellate review. (*Tacha v. Railway Co.*, 97 Kan. 571, 155 Pac. 922; *Lasnier v. Martin*, 102 Kan. 551, 171 Pac. 645.)

The action of Kagey was void; the plaintiff is entitled to have full judicial consideration of his motion for a new trial and to a ruling thereon. It follows that the writ of man-- damus should be allowed.