DAY *et al. v.* McCANDLESS.

(Division B. June 6, 1932.)

[142 So. 486. No. 30077.]

**Holmes & Potter**, of Jackson, for appellants.

**Franklin, Easterling & Rosenthal**, of Jackson, for appellee.

Briefs of counsel not found.

**Anderson, J.,** delivered the opinion of the court.

Appellants, Walter Day, William Miller, and C. W. Kirk, claiming to be the trustees of the Anding consolidated school district of Yazoo county, filed their bill of complaint in the chancery court of that county praying for an injunction to restrain appellee from going upon the school grounds and in the school build'ng of said school district, and acting as superintendent of said school for the scholastic year 1931-32. A temporary injunction was issued without notice. Appellee answered the bill denying its material allegations, and filed a mo-

tion to dissolve the injunction, and for damages for its unlawful issuance. The bill was filed on August 27, 1931. A final decree was rendered January 16, 1932, dissolving the injunction and awarding appellee damages for the unlawful suing out of the injunction in the sum of one hundred fifty dollars, as a reasonable fee for his attorneys in procuring the dissolution of the injunction. From that decree appellants prosecute this appeal.

The foundation of this litigation is the question whether or not appellee or J. O. Box was the legal superintendent of the Anding consolidated school district for the scholastic year 1931-1932. In order to fully understand the case, the opinion of the court in the case of State ex rel. Plunkett et al. v. Miller et al. (Miss.), 137 So. 737, should be consulted. By agreement of the parties, the record in that case is made a part of the record in this. The decision in that case determined that Warrington, Plunkett, and Day were the legal trustees of the school district, and as such had the right to control the school and elect its superintendent, and that the appellants in this case, Miller, Kirk, and Day, were not the legal trustees of the district and had no right to control the school and elect its superintendent. Day's right to act as a trustee was not questioned by either side, the contest was between Miller and Kirk on one hand and Warrington and Plunkett on the other. For convenience, the legal board will be hereinafter referred to as the Warrington board, while the illegal board, the appellant, will be referred to as the Miller board.

Appellee was duly and legally elected superintendent of the school for its scholastic year 1930-1931, and also for the scholastic year 1931-1932. It appears that some of the patrons of the school, in conjunction with the county superintendent of education, were dissatisfied with appellee as superintendent and determined to oust him. To that end on March 17, 1931, while the Warrington board, the legal board, was acting as the board of trustees for the school district, and in full possession of

the office as such, written charges were preferred against Warrington and Plunkett, two of the members of that board, upon which, after a hearing, the county superintendent of education undertook to remove them on the ground that they had ceased to be qualified electors of the county after they were elected trustees. Following their pretended removal there was an attempt to elect Miller and Kirk as their successors, and on March 21, 1931, Day joined Miller and Kirk and claimed the right to enter into the possession of the office of trustees of the school. Thereupon the Warrington board instituted quo warranto proceedings for the purpose of having the courts determine which board was the legal board. The circuit court held that the Warrington board was the legal board and not the Miller board, the appellants in this case. On November 23, 1931, the judgment of the circuit court was affirmed by the Supreme Court.

We think the solution of all the other questions involved in the case turns upon the right solution of the question whether or not from March 21, 1931, up to the final decision of the quo warranto case, the appellants, the Miller board, were de facto trustees of the school district. If they were, under the law, their acts were legal, notwithstanding the members of the Warrington board were the de jure trustees. In the quo warranto case Warrington and Plunkett, of the Warrington board, set up in their petition that they had been duly elected and qualified and were acting as trustees of the school district that the Miller board, without any lawful authority, was claiming to be the board of trustees, and prayed that it be ousted from the office which it claimed to hold. That case was tried on an agreed statement of facts. Paragraph 8 of the agreed statement of facts set out that the Miller board had "been exercising the duties and privileges of trustees of said Anding Consolidated School District, . . . but it is not agreed, however, that a vacancy in either of said offices of trustee in fact occurred, or that there existed occasion or necessity for

said election held on March 21, 1931.'' Paragraph 10 of the agreed statement of facts was in this language: ''That since the aforesaid election of the said C. W. Kirk and William Miller on March 21, 1931, the said C. W. Kirk and William Miller have each been claiming and asserting the right to the office of trustee of said Anding Consolidated School District, and the relators, I. H. Plunkett and J. B. Warrington, have each been claiming and asserting the right to the office of trustee of said Anding Consolidated School District.''

The Warrington board had in its custody the minute book of the board of trustees and retained it, refusing to surrender it to the Miller board. After March 21, 1931, however, both boards attempted to function. It is true the county superintendent of education recognized the Miller board as the legal board until the Supreme Court decided to the contrary. Beginning on March 20, 1931, the Warrington board had meetings and transacted such business as it could. It held meetings at the following times, up to and including December 18, 1931; April 17th, May 15th, May 22nd, May 23rd, June 6th, June 12th, July 10th, August 7th, August 26th, September 25th, October 23rd, November 20th. The Miller board held several meeting, beginning with March 21, 1931, and ending with December 18, 1931, as follows: April 9th, May 23rd, May 30th, August 19th, August 29th, September 25th, October 23rd, October 30th, November 20th, and December 1st.

The county superintendent of education, in his testimony, showed how he treated the two boards while the quo warranto case was pending and before it was finally determined. He testified as follows:

''Q. Mr. Clark, following the election of C. W. Kirk and William Miller as trustees on March 21, 1931, who then assumed the duties of school trustees of Anding Consolidated School District? A. W. L. Day, C. W. Kirk and William Miller.

''Q. Who made reports to you from month to month

as to the operation and conduct of that school and as to the teachers' salaries and superintendent's salary? A. The report handed me was signed by C. W. Kirk, W. L. Day and William Miller and also Warrington and Plunkett.

"Q. On whose report did you make payment? A. Report signed by the three trustees, Day, Kirk and Miller.

"Q. Were there any expenditures made on behalf of that school after C. W. Kirk, William Miller and W. L. Day assumed to act as board of trustees of that school? A. Money expended? Yes, sir.

"Q. Who made the requisition on the county superintendent of education for the payment of expenses incident to the operation of that school—allowances of bills aside from teachers' salaries? A. William Miller, C. W. Kirk and W. L. Day. Some orders were issued by Warrington and Plunckett, but I wouldn't recognize those. . . .

"Q. During the time Mr. McCandless finished the 30-31 school session, I will ask you to state if it isn't a fact that all reports of McCandless were signed by both sets of trustees? A. Yes, sir, Mr. McCandless would first present the reports signed by Plunkett and Warrington and I refused to sign them.

"Q. You told him to get the others to sign? A. He came in with reports signed by each set, but I refused the Plunkett and Warrington—he came prepared both ways."

It is manifest from the record in this case, in connection with the record in the quo warranto case, that the Warrington board, the de jure board which had been functioning as such prior to the attempt on the part of the Miller board to supplant it, never surrendered its office. It is true the county superintendent by recognizing the Miller board hampered to some extent the proper functioning of the Warrington board, but it is also true that the Miller board never was able to entirely oust the

Warrington board. All the while appellee, as superintendent of the school, contended that the Warrington board was the legal board, and that the Miller board was a usurper.

It was held in Board of Levee Commissioners v. Montgomery, 145 Miss. 578, 110 So. 845, 846, that, where two levee boards were attempting to function, as the result of a dispute as to the title of two members of the board, a cotton tax collector appointed by one of the boards in pursuance of the statute, which board was subsequently held by the court to have been acting without authority, could not recover his commissions because the statute (Hemingway's 1927 Code, section 2811, Code 1930, section 2899) declaring the acts of de facto officers valid had no application; and that in such case, where the two boards were attempting to function simultaneously, each claiming a right to act, the acts of the legal board would be recognized. The court said in that case: "Appellant's position is that the principle of law that the acts of a de facto officer in possession of an office, performing the functions thereof, are valid, has no application to the facts of this case for the reason that the West board, as well as the Witherspoon board, was actually attempting to function; that one board was just as much in charge of the office and records and papers of the Mississippi levee board commissioners as the other; that therefore this is not a case where a de facto officer is in charge of the office, performing its functions, excluding the de jure officer, but it is a case where both the de jure and the de facto officers were in charge of the office, one just as much as the other, each attempting to perform the duties of the office."

In Cohn v. Beal, 61 Miss. 398, the court held that there could not be a de facto and also a de jure officer holding and exercising the functions of an office at the same time, and that there could not be two de facto incumbents of an office at the same time, and where two are acting simultaneously, each under claim of right, the acts of the one

who has the legal right to the office will be recognized. To the same effect is 22 R. C. L., p. 589, section 309.

If a de jure officer, who is in possession of an office, performing its functions, refuses to yield possession of his office, no person can take the office away from him by force and become a de facto officer. A person assuming, without authority, to exercise official powers does not become an officer de facto if his authority to exercise such powers is promptly challenged. Golden v. Mitchell, 107 Kan. 1, 190 Pac. 785.

Appellants contend that appellee was estopped from acting as superintendent of the school for the scholastic year 1931-1932, and that such estoppel grew out of the following state of facts: As soon as the Miller board assumed to act as the legal board, charges were preferred against appellee by some of the patrons of the school. He was accused of improper conduct and neglect of duty; one specific charge was that he was addicted to profanity in the presence of the pupils of the school. These proceedings looked to a removal of appellee after a trial before the county superintendent of education, as provided by the statute. After these charges had been preferred, appellee agreed to resign his position as superintendent for the scholastic year 1931-1932, to which he had been legally elected by the Warrington board, and to tender his resignation by May 21, 1931, upon condition that he be reimbursed for certain expenditures he had made out of his own funds on behalf of the school district, and that he be permitted to occupy the superintendent's residence on the school grounds until the 15th of August, 1931. His letter of resignation was addressed to the school board. The evidence showed, without conflict, that the funds appellee had expended of his own on behalf of the school were for legitimate school expenses and were justly due him. Both the Warrington board and the Miller board, the appellants in this case, accepted appellee's resignation. The Warrington board, after doing so, re-elected appellee as superintendent of

the school for the scholastic year 1931-1932, while the Miller board elected J..O. Box.

It was by virtue of these elections that appellee and Box became rival contendents for the superintendency, out of which this injunction suit arose. Estoppel operates only in favor of one who, in reliance upon an act, representation, or silence of another, so changes his situation as that injury would result if the truth were shown. There must have been a representation or concealment of material facts. The representation must have been made with knowledge of the facts; the party to whom it was made must have been ignorant of the truth of the matter; it must have been made with the intention that the other party should act upon it. The other party must have been induced to act upon it. Davis v. Butler, 128 Miss. 847, 91 So. 279, 709; Turnipseed v. Hudson, 50 Miss. 429, 19 Am. Rep. 15; Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1061. In the Turnipseed case the court said: "It would not be a sound public policy to permit parties to treat an office as a 'mere toy' for 'amusement, subject to be taken up, laid down and taken up again at will.' "

The Miller board and appellee had no right whatever to deal with each other with reference to the superintendency of the school. The Warrington board alone had jurisdiction of that question. All concerned were presumed to know the law, and therefore were presumed to know that the Warrington board was the legal board. Whatever negotiations appellee had with the Miller board with reference to the school were with that board as individuals and not as the school board. One of the indispensable elements of estoppel is injury to the person claiming it. The Miller board could suffer no injury by any course taken by appellee; it had no rights which could be invaded by appellee.

Appellee made a motion to dissolve the injunction on original bill, answer, and evidence adduced at the hearing. One of the grounds of the motion was that the

Miller board was not the legal board and had no right to act as the board of trustees of the school. On the hearing of the motion, appellee presented a resolution of the Warrington board asking that the bill be dismissed. The chancellor in his decree dismissed the bill, placing it upon the ground of that request by the Warrington board. The decree recited that the Warrington board was the legal board.

Appellants argue that under section 519, Code 1930, there could not have been a dismissal on that ground until the cause was revived in the name of the Warrington board. In that contention the appellants proceed upon the assumption that the Miller board was the de facto board of trustees. We have undertaken to show that there is no merit in this contention, because all the while the Miller board was a mere intruder, it was never the de facto board. After the decision of the quo warranto case appellee was entitled to have the bill dismissed, because appellants had no right to bring it. It is wholly immaterial upon what ground the chancellor placed the dismissal of the bill. There was no error in dismissing it.

Appellants argue that damages ought not to have been allowed on the dissolution of the injunction bond. Again appellants, in making this contention, assume that when the bill was filed they were the de facto trustees of the school and therefore were entitled to file the bill. The injunction bond was a guaranty on the part of the appellants that they were entitled to the injunction. The dismissal of the bill, and the dissolution of the injunction was conclusive on appellants that the injunction was wrongfully sued out. R. L. Johnson et al. v. Perry W. Howard et al. (Miss.), 141 So. 573.

We do not think there is sufficient merit in the other questions argued on behalf of appellants to call for a discussion by the court.

Affirmed.