980 So.2d 275 (2007)
MISSISSIPPI REAL ESTATE APPRAISER LICENSING AND CERTIFICATION BOARD, Appellant
v.
J. Daniel SCHROEDER, Appellee.
No. 2005-CC-01600-COA.
Court of Appeals of Mississippi.
June 19, 2007.
Rehearing Denied January 22, 2008.
*279 Office of the Attorney General by Maudine G. Eckford, Jackson, attorney for appellant.
Tina Rose Singletary, Britt R. Singletary, Jackson, Scott Derrick Smith, attorneys for appellee.
EN BANC.
BARNES, J., for the Court.
¶ 1. Following two separate hearings, the Mississippi Real Estate Appraiser Licensing and Certification Board ("Board") found that J. Daniel Schroeder had violated several provisions of the Uniform Standards of Professional Appraisal Practice ("USPAP") in preparing two appraisal reports. The Board found that Schroeder's appraisal report for unimproved property located in Gautier, Jackson County, Mississippi, ("Gautier appraisal") and dated July 23, 1999, contained eleven violations of USPAP standards. An appraisal report dated October 13, 1998, for a Krystal hamburger restaurant to be located on commercial property in Ocean Springs, Mississippi, ("Krystal appraisal") was found to contain two violations of USPAP standards.
¶ 2. For the violations contained in the Gautier appraisal, the Board ordered Schroeder to complete fifteen hours of USPAP course work, placed him on probation for two years from the date the ordered course work is successfully completed, and directed that the disciplinary action be published in the Board's newsletter. Schroeder received identical disciplinary action for the violations contained in the Krystal appraisal, except for a differing probationary term of six months. Schroeder appealed both decisions to the Circuit Court of Harrison County, and that court, having ordered consolidation of the appeals, reversed both orders of the Board, finding that they were arbitrary and capricious and not supported by the evidence. Aggrieved by the order of the circuit court, the Board appeals, asserting error in that its decisions were not arbitrary or capricious and were supported by the evidence. We agree with the Board and, therefore, we reverse the order of the circuit court and render judgment reinstating the Board's orders.

SUMMARY OF THE FACTS AND PROCEDURAL HISTORY
¶ 3. According to Schroeder's hearing testimony, he has been a licensed real estate appraiser for more than twenty-five years, has held the titles of chief investigator and director for the Mississippi Real Estate Commission, and has been presented as an expert witness in both federal and state court proceedings. Schroeder also testified that he owns an educational facility that teaches both pre-licensing and continuing education courses for real estate appraisers. In addition to his real estate appraiser's license, Schroeder testified that he also holds a Mississippi real estate broker's license and a Mississippi contractor's license. According to Schroeder, prior to the disciplinary action taken by the Board in the instant case, he has never been disciplined with respect to any of his professional licenses.
*280 ¶ 4. On May 30, 2000, the Board received an anonymous complaint regarding an appraisal Schroeder completed in October 1998, for the Ready Bank of Fort Walton Beach in Fort Walton, Florida. This appraisal was requested for a Krystal hamburger restaurant situated on approximately 1.06 acres of commercial property in Ocean Springs, Jackson County, Mississippi. On June 9, 2000, the Board received a second anonymous complaint regarding an appraisal performed in July of 1999. The Gautier appraisal was conducted at the request of the Peoples Bank of Biloxi, Mississippi, and the subject property was 6.37 acres of unimproved property located in Gautier, Jackson County, Mississippi. Apparently, the Gautier property was to be subdivided into nineteen residential lots, and the Gautier appraisal report reflects the value of the property as improved in this regard.
¶ 5. The Board retained Iowa appraiser Alan Hummel to review the Gautier and Krystal appraisal reports. Hummel submitted his "Review Appraiser's Conclusions" on April 9, 2001. Thereafter, the Board sent Schroeder separate letters of inquiry, each containing an itemized list of "possible concerns" with regard to the respective appraisals. Following Schroeder's responses to each, the Board issued a "Notice of Hearing" with an attached list of "Violations Alleged" for the Krystal appraisal on December 18, 2001. On the same date, the Board issued a "Notice of Hearing" with a list of alleged violations for the Gautier appraisal.
¶ 6. A Board hearing was had in the Gautier matter on June 20, 2002, and in the Krystal matter on April 3, 2003. Hummel testified as an expert witness on behalf of the Board at both hearings. His testimony essentially mirrored his findings and conclusions contained in his "Review Appraiser's Conclusions." Schroeder also testified at both hearings. As to the Gautier matter, Schroeder testified that the appraisal report sent to the Board along with the anonymous complaint did not contain all of the documents originally contained in the bound report that he submitted to his client. Furthermore, Schroeder asserted that any matter not sufficiently explained in the report itself was explained verbally to the client. While Schroeder conceded that neither report was perfect, he maintained that any errors contained therein did not mislead his client in any way nor did it render the reports unreliable.
¶ 7. By order dated August 22, 2002, the Board ruled that Schroeder had committed eleven violations of the USPAP and/or generally accepted ethical standards and practice in completing the Gautier appraisal. In the Krystal case, the Board ruled by order dated April 30, 2003, that Schroeder had committed two USPAP violations. Pursuant to the violations found in the Gautier appraisal, the Board ordered Schroeder to complete not less than fifteen hours of education on the USPAP, and immediately placed Schroeder on probation. According to the order, the "term of probation shall continue for 24 months from the date of his successful completion of the aforementioned 15 hours of USPAP training." The Board further ordered that during his probationary period, Schroeder could not supervise another licensee, could not be listed as a supervisor by another licensee, and must maintain a log of all appraisal assignments that he completes. Finally, the Board ordered that Schroeder's disciplinary action be published in the Board's newsletter. The disciplinary action contained in the Krystal ruling was identical to that contained in the Gautier order, with the exception of the term of probation. According to the Krystal order, Schroeder was "immediately placed *281 upon probation for a period not to exceed six (6) months."
¶ 8. With respect to the Board's August 22, 2002 ruling in the Gautier matter, Schroeder filed his "Notice of Appeal and Application for Review" in the Circuit Court of Harrison County on September 20, 2002. Schroeder filed a "Notice of Appeal and Request for Stay" in the Krystal case on May 28, 2003. The circuit court ordered that the cases be consolidated. In pertinent part, the circuit court's judgment, entered February 23, 2005, reflects the following conclusions:
This Court has heard argument, reviewed the record and exhibits, read the briefs of the parties and finds the evidence was insufficient to prove Mr. Schroeder materially breached either the USPAP or any ethical standard. The Mississippi Real Estate Appraiser Licensing and Certification Board acted arbitrarily and their orders are reversed and rendered.
In the Gautier appraisal the Board found that of the 13 violations charged 11 had some substance. In describing the violations the Board repeatedly used conditional language which prevents this Court from determining whether there were real violations or just possible violations. The orders are replete with statements that violations occurred because something did not appear "clearly or prominently" stated; that statements "can be described" as misleading (not that they are); and that findings are "generally unsupported." The Washington Avenue appraisal [Krystal appraisal] contains two violations. In the Washington Avenue order the Board again uses conditional language in its findings, "This factor does not appear to have been considered. . . ." "Does not appear" along with the other conditional language will not suffice to support a finding that the Board's orders were based on substantial evidence.
¶ 9. Aggrieved by the judgment of the circuit court, the Board filed its "Notice of Appeal" on March 25, 2005. In essence, the Board argues on appeal that its decisions were not arbitrary or capricious and were supported by the evidence, and that the circuit court erred by impermissibly substituting its judgment for that of the Board in holding otherwise. The Board also refutes Schroeder's argument that the Board was not statutorily constituted pursuant to Mississippi Code Annotated section 73-34-7(1)(c) (Rev.2000) and that, therefore, the orders of the Board were not legally valid  an argument that was rejected by the Board and by the circuit court.[1] We agree with the Board that its decisions were supported by substantial evidence, were not arbitrary or capricious, and that the actions taken by the Board were valid. Accordingly, we reverse the judgment of the circuit court and render judgment reinstating the orders of the Board.

STANDARD OF REVIEW
¶ 10. As has been acknowledged by both this Court and by the Mississippi Supreme Court, an appellate court's review of an administrative agency's findings *282 and decisions is limited as follows: "an agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights." Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1284(¶ 13) (Miss.2005) (quoting Pub. Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 425(¶ 11) (Miss.2000)).

ANALYSIS
¶ 11. Before we address the issues presented by the parties to this appeal, a brief background discussion of the USPAP is in order. USPAP sets the minimum standards for appraisal practice. It is a national standard and has been expressly adopted by the Mississippi Legislature. See Miss.Code Ann. § 73-34-37 (Rev. 2004). Standard 1 of the USPAP provides the rules that an appraiser must use in developing an opinion of value for real property. Standard 2 governs the appraisal report and its contents.
¶ 12. Regarding what must be contained in an appraisal report, USPAP Standards Rule 2-2 states that "[e]ach written real property appraisal report must be prepared under one of the following three options and prominently state which option is used: Self-Contained Appraisal Report, Summary Appraisal Report, or Restricted Use Appraisal Report." "The essential difference among these three options is in the content and level of information provided." Standards Rule 2-2 cmt. "An appraiser must use care when characterizing the type of report and level of information communicated upon completion of an assignment." Id. The Gautier appraisal report is categorized as a self-contained report, and the Krystal report is a restricted-use appraisal report. The Gautier report, because it is "self-contained," was to be developed without departing from the standard rules of USPAP, with a comprehensive explanation of all analysis and conclusions to be found within the report. Thus only the original report is needed to understand how the appraisers arrived at their conclusions, eliminating the need to go outside the report. By contrast, in the Krystal restricted-use appraisal report, the USPAP requirements are not so stringent, and work file information apart from the original report may be studied to see if assertions made within the appraisal complied with USPAP's standards.
I. WHETHER THE BOARD'S DECISIONS WERE ARBITRARY OR CAPRICIOUS.
¶ 13. "Arbitrary and capricious" has been defined as a "[c]haracterization of a decision or action taken by an administrative agency or inferior court meaning willful and unreasonable action without consideration or in disregard of facts or law or without determining principle." Black's Law Dictionary 105 (6th ed.1990). The Mississippi Supreme Court has also defined the arbitrary and capricious standard regarding review of administrative agency actions. An "arbitrary" act is one "not done according to reason or judgment" but of the will alone. Miss. State Dep't of Health v. Southwest Miss. Reg. Med. Ctr., 580 So.2d 1238, 1240 (Miss.1991). A "capricious" act is one done "in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles. . . ." Id. Our Supreme Court has also stated that the "arbitrary and capricious" standard is "open-textured" and eludes "precise definition or mechanical application." Id.
¶ 14. We find the Board had a full and reasonable understanding of the facts. *283 The Board's decision was made not upon will alone but according to reason and judgment, fully based upon substantial evidence presented in the record. The record indicates that the Board members, extremely knowledgeable in their own professional industry, carefully reviewed the evidence and came to their conclusions. Thus we find the circuit court was in error in reversing the rulings of the Board regarding the Gautier and Krystal appraisal reports.
II. WHETHER THE BOARD'S DECISIONS WERE SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 15. An agency's decisions will remain undisturbed by our Court unless they are unsupported by substantial evidence. Howard, 905 So.2d at 1284(¶ 13) (citing Marquez, 774 So.2d at 425(¶ 13)). "Substantial evidence" has been defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Id. at 1285(¶ 16) (quoting Marquez, 774 So.2d at 425(¶ 13)). It is more than a mere scintilla or suspicion, but "that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred." Id. (quoting Pub. Employees Ret. Sys. v. Dishmon, 797 So.2d 888, 892(¶ 13) (Miss.2001)). Mississippi law is clear that generally this Court may "not reweigh facts or substitute its judgment for that of the administrative agency." Miss. Real Estate Comm'n v. Anding, 732 So.2d 192, 198(¶ 18) (Miss. 1999) (citing Miss. Comm'n on Envtl. Quality v. Chickasaw Co. Bd. of Supervisors, 621 So.2d 1211, 1216 (Miss.1993)). In our case, there was ample evidence to support the findings of the administrative board. The circuit court impermissibly substituted its judgment for that of the Board in its reversal.
¶ 16. Schroeder makes three general arguments related to the lack of the evidence for the violations found by the Board in both the Gautier and Krystal appraisals. We will address these arguments individually, and then address the lack of a challenge to the individual violations cited by the Board. First, Schroeder argues that the Board did not consider all of his documents. Second, Schroeder argues that the Board's findings were articulated in conditional language and thus not based on substantial evidence. Lastly, he argues that the violations were merely minor, and any missing information which could have constituted a violation was reported to his clients orally, and his clients were not interviewed by the Board. We find all of his arguments unsupported by the record and thus not persuasive.
A. The Board's Consideration of all Pertinent Documents in Making its Ruling.
¶ 17. Schroeder contends that the Board did not consider all of the documents contained in the original appraisal reports in rendering its decision.
1. The Gautier Appraisal Report.
¶ 18. Regarding the Gautier appraisal report, Schroeder testified at that hearing that the documents reviewed by expert witness Alan Hummel did not contain all of the documents in Schroeder's work file or which were contained in the Gautier appraisal report. Specifically, Schroeder pointed out during his testimony that Hummel did not have a certificate of limiting conditions in the documents because he cited this omission as error in his initial review to the Board, and the certificate was included in the original Gautier report. While this may prove that Hummel did not have a complete report when making his initial review, this charge *284 was not asserted nor was a violation found in the Board's review with respect to this issue. Schroeder also testified that there was not an engineering report or subdivision plats in Hummel's documents, which were also contained in the original Gautier appraisal report. Schroeder went on to testify that his appraisal reports are usually bound and that the one anonymously sent to the Board had been copied from his original bound version. During cross-examination, when asked why he was just revealing that the Board's copy of the Gautier appraisal report was incomplete and not an accurate copy of the original, Schroeder represented that he had brought this fact to the attention of the Board earlier, yet the report remained incomplete.
¶ 19. We find this argument unpersuasive. Schroeder had numerous opportunities to ensure that all materials contained in the original Gautier appraisal report submitted to his client were before the Board. Specifically, the Board allowed Schroeder to submit documents at numerous times: when the complaint was first filed, with his written responses, and at the administrative hearing. He stated in a letter to the Board on June 14, 2001, in response to possible USPAP violations, that three documents were missing from the original Gautier appraisal report: the engineering report, a survey, and the certificate of limiting conditions, among other documents. He wrote that the documents were in his office, but not in the file. Still, Schroeder did not provide the Board with copies of the documents. Moreover, when Schroeder raised for the first time at the hearing on June 20, 2002, that the Board did not have before it a complete copy of the original bound Gautier appraisal report, the Board asked Schroeder to provide a copy of the original report. He stated he could not, as it had been taken apart to provide exhibits. Ultimately, however, these three documents were entered into evidence at the Gautier hearing and considered by the Board.
¶ 20. Finally, Schroeder does not make a persuasive argument with respect to how any of the "missing" documents that he claims were part of the original Gautier report impacted the Board's findings, if they were indeed deemed missing. In fact, Schroeder had to clarify during cross-examination his statement that certain of the "missing" documents were actually included in the original Gautier appraisal report since some of the documents that he claimed were part of the original report could not have been, because these documents were dated after the July 23, 1999 appraisal report, and thus could not have been relied upon or included in the original report. In sum, if the Board did not have the complete report before it, Schroeder had ample opportunity to provide one, but did not. Accordingly, the record does not support his position in this regard.
2. The Krystal Appraisal Report.
¶ 21. Schroeder makes the same argument regarding the Krystal appraisal. Since the Krystal report was categorized as a "restricted appraisal," unlike Gautier's self-contained report, it was permissible and even necessary to look at work file product in order to see if the report was in compliance with USPAP. Schroeder claims that Hummel did not review Schroeder's work file information in making his determination that the Krystal report violated USPAP. However, Hummel testified that he reviewed both "the appraisal report itself and file documentation that was forwarded to [him] by the board as workfile product." Further, Hummel testified that the Board represented to him that he had everything in Schroeder's work file, and there was other testimony in *285 the record which indicated that Hummel had received Schroeder's entire work file.
¶ 22. Schroeder responded to the Board's initial investigatory request for explanations and information on the Krystal appraisal via letter June 8, 2001, advising the Board of plat information and cost estimates in his work file, but he did not provide these documents to the Board at that time or later in response to the Board's formal complaint of December 2001. At the Krystal hearing April 3, 2003, Schroeder produced for the first time excerpts from his work file. Also at this hearing, Schroeder supplemented the Krystal record with pre-prepared written responses to the alleged violations in the Board's formal complaint.
¶ 23. According to the testimony and evidence provided in the record, we fail to see how the Board could not have had before it all of the documents necessary to consider both the Gautier and Krystal complaints, as Schroeder argues. Further, Schroeder has not identified any specific finding of the Board that this additional information would have altered.
B. The Language of the Board's Rulings.
¶ 24. Schroeder also argues, consistent with the circuit court's rationale, that the Board's rulings in its orders were couched in conditional language and thus not based on substantial evidence.
¶ 25. Regarding the ruling on the Gautier report, however, upon examination of the Board's order, it could only be said that "conditional language" is possibly found in four of the eleven rulings of violations to USPAP. The remaining seven rulings have no language that could be construed as conditional, and in fact they are definitive and emphatic. The structure of the order should be noted as well. Each charge enumerated has an initial statement of the charge, then the allegation[2] in italics, and then the Board's ruling (violation or no violation) and an explanation of its finding. The Board's findings are our only concern regarding the possibility of conditional language. For example, the following is a finding of a violation by the Board in charge three in the Gautier report, which states:
The appraisal is based on a hypothetical (proposed improvements). The report does not clearly or prominently state the hypothetical condition. In addition, because the improvements are proposed, the value estimate should be a "prospective" value assuming completion of the proposed improvements. As written, the appraisal can be described as misleading. The description of proposed improvements is inadequate to meet the requirements of this level of report.
(Emphasis added.) The finding makes a statement of the possible consequences of the violation to the appraisal report. Stated differently, with this statement the Board was merely saying that "because you committed this violation, the report could be misleading." For a violation of USPAP to have occurred, the report does not necessarily have to be misleading. What is important in these findings is that the information which was required by USPAP was not found in the Gautier report. Relatedly, we find, as stated in oral argument by the Board's counsel, that the use of conditional language by the phrase "can be" in three of the rulings and the phrase "generally unsupported" in one ruling is more a matter of draftsmanship than a basis for stating the Board's findings are unsupported by evidence.
*286 ¶ 26. Again, Schroeder makes the same argument regarding the Board's Krystal order for that report's two violations. This point was noted in the circuit court's order as a reason for reversal. Specifically, the circuit court, and thereby Schroeder, take issue with the Board's statement regarding the appraiser making "an upward adjustment for size" to a comparable sale even though "only ½ the site could be utilized" and that the comparable site would require "$75,000 worth of fill work." The Board continues that "[t]his factor does not appear to have been considered" and that thus the appraisal was not appropriately valued. The second violation finds that although "the appraisal report contains a series of errors, that when considered individually, may not significantly affect the result of an appraisal, but which when considered in the aggregate, would be misleading. . . ." The order specifically states that there was a failure to clarify a property description, and "testimony from [Schroeder] suggests that the inclusion of [the information about fill work] was in error and that no fill work was actually needed, thereby negating the necessity of an adjustment. Taken as true, the inclusion of this information was in itself error." The order finds two other errors as well.
¶ 27. We find that the above statements in the Board's Krystal order are not conditional and are based on substantial evidence in the record. Since the Krystal report is a restricted appraisal, it did not need to be as detailed as the Gautier report, but the information still needed to be accurate. The Board's order reflects this violation of inaccuracy. Even if we were to say that "appear" is too conditional to make a finding of a violation for this particular issue, the Board found a "series" of errors which made the appraisal careless or negligent in manner, and the order identifies two other definitive instances where the appraisal report was inaccurate.
C. The Severity of the Violations.
¶ 28. Schroeder argues that the violations cited by the Board are minor. He also maintains that any item missing from his appraisal reports was communicated to his clients orally and thus does not violate any standards. Further, Schroeder states that the Board never spoke with his clients to see if they were in fact misled by his reports. His argument amounts to "no harm, no foul."
¶ 29. We find this an invalid argument. The purpose of the USPAP is to ensure that an appraisal is objectively reliable and to prevent those who rely on the appraisal reports from being misled. There are certain matters which must be in an appraisal report according to the USPAP, and simply communicating those matters orally to the client will not suffice. The Board's order found a total of eleven violations in the Gautier appraisal and two violations in the Krystal appraisal. It matters not if they were severe or minor violations. USPAP is a national professional standard, adopted by our state under Mississippi Code Annotated section 73-34-37 (Rev.2004).[3] The Real Estate Appraisal Board deems these standards to be important. Schroeder did not follow them. We cannot substitute our judgment for that of the Board's findings of violations of USPAP, unless we were to find that there were no violations at all. But, since that is not the case, whether or not *287 the violations were minor has no bearing on the validity of the Board's decision.
D. The Individual Violations in the Gautier and Krystal Appraisal Reports found by the Board.
¶ 30. The circuit court does not invalidate specific violations for either appraisal in its order. Instead, that court generically states that, after a review of the record, "the evidence was insufficient to prove Mr. Schroeder materially breached either the USPAP or any ethical standard." Likewise, Schroeder, in his brief, does not specifically address any of the Board's findings for either the Gautier or Krystal appraisal. Instead, he makes the arguments supra about a lack of consideration by the Board of all of the documents and the language of the Board's orders. The conditional language in the Board's orders was the only stated reason the circuit court found the findings of the Board not supported by the evidence. Because neither the trial court nor Schroeder challenged the violations cited by the Board specifically, and because we find the Board's language adequate, we decline to address each of the violations individually. Instead, we will analyze sample violations from each appraisal in support of our holding that there is substantial evidence to justify the Board's imposition of professional discipline.
¶ 31. Charge four in the Gautier report states that the appraiser did not identify, analyze and report "the effect on use and value of existing land use regulations, modifications demand, adaptability and market trends as required under Standards Rules 1-3(a) and 2-2(a)(x)."[4] Expert witness Hummel's report alleged that the "stated scope of work was not consistent with what was provided in the report." The scope of the appraisal was to include "[m]arket data, including land sales, and supply and demand," among other items. However, "[t]here was no analysis or presentation of data supporting demand for or absorption time of the 19 lots." Schroeder projected it would take twelve months to sell the nineteen lots once they were placed on the market; however, he did not provide any data to support this contention. Hence, the Board found the "support data . . . in the report is lacking" and "[t]he data in the area analysis is old and incomplete." This charge is also similar to charge eleven. Rule 1-3(a) and Rule 2-2(a)(x) require data in support of stated market values and trends found within the appraisal. The language of these two rules is unequivocal with the word "must." Quite simply, if the information is not provided in the appraisal, then there is a violation. These sample violations are typical of the Gautier appraisal report's entire failure to meet USPAP specific standards.
*288 ¶ 32. In the Krystal report, as previously discussed above, the first violation found the site to be improperly valued according to Rules 1-4(a) and 2-1(a) respectively.[5] Specifically, the violation states an upward adjustment for size was made to a comparable sale even though the report indicates only one-half the site could be utilized. Also, the comparable site required $75,000 worth of fill work, which may not have been taken into consideration. This violation is supported by substantial evidence in the record. Consequently, we do not find the Board was in error in finding the Krystal report failed to conform to USPAP standards.
¶ 33. The eleven violations in the Gautier report and the two violations in the Krystal report are straightforward and fully supported by substantial evidence in the record. Accordingly, we reverse, render, and reinstate the judgment of the Board.
III. WHETHER THE ACTIONS OF THE BOARD WERE BEYOND THE SCOPE OR POWER GRANTED TO THE BOARD.
¶ 34. Schroeder claims the actions of the Board were outside its scope or power since the Board was in violation of the Mississippi Code Annotated section 73-34-7(1)(b) and (c) which, prior to July 2004, stated that "[n]ot more than two (2) positions on the board shall be filled with appointees who hold membership in the same professional organization." As noted above, Schroeder alleges five members of the Board were members of the National Association of Realtors and from August 2000 through December 2000, three members were members of the Appraisal Institute. This Court will afford great deference to an administrative agency's construction of its own rules and regulations and the statutes under which it operates and matters of law will be reviewed de novo. Sierra Club v. Miss. Envtl. Quality Permit Bd., 943 So.2d 673, 678(¶ 10) (Miss.2006).
¶ 35. The Board argues that since Schroeder did not file a cross-appeal challenging the circuit court's ruling on this issue, this issue is procedurally barred. The Mississippi Supreme Court has stated that "while a cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal, it is not necessary to urge an alternative ground for affirmance, even if the trial court considered and rejected that alternative ground." Dunn v. Dunn, 853 So.2d 1150, 1152(¶ 4) (Miss.2003) (citations omitted). Schroeder is merely asserting another ground for affirming the circuit court's ruling. Thus, there is no requirement for a cross-appeal on this issue, and Schroeder's claim is not procedurally barred.
¶ 36. The circuit court's analysis of this issue states, "[i]n light of the Court's ruling this argument need not be addressed except to say that section 25-1-37 Miss. Code Ann. (1972) provides that official acts are valid and binding whether the person is lawfully entitled to hold the office." Specifically, Mississippi Code Annotated section 25-1-37 provides:
The official acts of any person in possession of a public office and exercising the *289 functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not and whether such person be lawfully qualified or not.
It is undisputed that all of the Board members, at the time of the hearings, had been duly appointed by the governor of the State of Mississippi, thereby making them public officials. Therefore, pursuant to section 27-1-37, the members of the Board, even if serving in violation of section 73-34-7(1)(b) and (c), would still have valid authority to act in official capacity as "de facto" officers. See Chambliss v. State, 801 So.2d 824 (Miss.Ct.App.2001). Schroeder cites Day v. McCandless, 167 Miss. 832, 839, 142 So. 486, 489 (1932), for the proposition that since he challenged the Board's authority to exercise its power, this negates the officers' de facto status. However, that case is distinguished factually from the one before us. The "officer" in Day was attempting to usurp another officer's authority and assume that authority. Id. The court said since the officer who was already acting with authority did not relinquish his authority, "no person can take the office away from him by force and become a de facto officer." Id.
¶ 37. We agree with the circuit court's analysis and hold that, while the constitution of the Board may have been in violation of the statute, the Board's actions were valid and enforceable.
IV. WHETHER THERE WAS A CONFLICT OF INTEREST WITH RESPECT TO THE MANNER IN WHICH THE BOARD INVESTIGATED THE COMPLAINTS, BROUGHT FORMAL CHARGES, AND RULED ON THOSE CHARGES.
¶ 38. Schroeder brings this issue to the court alleging "plain error" under the Mississippi Rules of Appellate Procedure Rule 28(a)(3) which gives an appellate court the authority to notice a plain error not identified or distinctly specified in the appellant's brief. The "plain error doctrine" includes anything that seriously affects the fairness, integrity or public reputation of judicial proceedings. Taylor v. State, 754 So.2d 598, 601(¶ 13) (Miss.Ct. App.2000). The court must determine whether an error deviates from a legal rule, whether that error is plain, clear or obvious, and whether the error is prejudicial in its effect upon the outcome of the trial court proceedings. Id.
¶ 39. Schroeder alleges the manner in which the Board investigated, charged and adjudicated the claims against him created a conflict of interest. Schroeder advances three cases in support of this issue: Dean v. Pub. Employees Ret. Sys., 797 So.2d 830 (Miss.2000); Freeman v. Pub. Employees Ret. Sys., 822 So.2d 274 (Miss.2002) and Byrd v. Pub. Employees Ret. Sys., 774 So.2d 434 (Miss.2000). All of these cases involve physicians who not only participated in the investigatory process but also served on the reviewing Medical Board and participated in the hearing and adjudication process. The law is clear, however, that members of an administrative agency may receive the results of investigations, approve the filing of charges or formal complaints instituting enforcement proceedings, and then participate in the ensuing hearings. McFadden v. Miss. State Bd. of Med. Licensure, 735 So.2d 145, 158(¶ 52) (Miss.1999) (emphasis added). "This mode of procedure does not violate the Administrative Procedures Act, and it does not violate due process of law." Id. However, "[w]hile administrative agencies may perform both investigative and adjudicative functions, those functions cannot *290 be performed by the same person." Freeman, 822 So.2d at 281(¶ 23).
¶ 40. In the case before us, the investigating Board member, Mr. Robert Crook, reviewed both complaints against Schroeder and then submitted the case to someone else to conduct the actual investigation. Upon receipt of findings by the investigator, Mr. Crook reviewed those results and, based on his review, submitted a recommendation to the Board for a formal hearing. His role was merely to indicate the need for other Board members to review the potential violations in a formal hearing. Schroeder objected to Mr. Crook's participation in the process citing conflict of interest. In the second administrative hearing, Schroeder filed a motion for recusal of the investigating Board member, Mr. Crook, which was granted. During the hearings, Mr. Crook did not participate in the deliberation and adjudication.
¶ 41. "Courts err when they insist on agency procedures modeling themselves on the traditional view of the separation of powers." Kitchens v. Jerry Vowell Logging, 874 So.2d 456, 462(¶ 19) (Miss.Ct.App.2004). "[T]here is a presumption that the officers conducting the hearing and the members of the Board behave honestly and fairly in the conduct of the hearings and in the decision-making process." McFadden, 735 So.2d at 158(¶ 53) (quoting United Cement v. Safe Air for the Env't, Inc., 558 So.2d 840, 842 (Miss.1990)). "Absent some showing of personal or financial interest on the part of the hearing officer or evidence of misconduct on the officer's part, this presumption is not overcome." Id. (quoting United Cement, 558 So.2d at 842-43). We find there is no evidence of bias or evidence of misconduct in the actions of the Board and there was no conflict of interest in the Board's investigation and adjudication process. We, therefore, find no error, much less plain error, in the administrative process in this case.
¶ 42. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. THE ORDERS OF THE BOARD ARE REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MYERS, P.J. DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] The current version of Mississippi Code Annotated section 73-34-7(1)(b) (Rev.2004) provides that "[n]ot more than two (2) positions on the board shall be filled with appointees who hold membership in the same professional appraisal organization." Prior to the 2004 amendment, subsection (c) of this statute did not contain the qualifying adjective "appraisal" before the word "organization," arguably limiting board membership with respect to any professional organization. As will be discussed more fully below, even if some of the Board's members were not de jure officials due to a technical violation of this statute, they were, nevertheless, de facto officials who performed valid acts.
[2] The allegations were taken from Hummel's report.
[3] This statute states in pertinent part: "Each real estate appraiser licensed under this chapter must comply with generally accepted standards . . . and ethical rules . . . currently evidenced by the uniform standards of professional appraisal practice. . . ." Miss.Code Ann. § 73-34-37 (Rev.2004) (emphasis added).
[4] USPAP Standards Rule 1-3(a) states that [w]hen the value opinion to be developed is market value . . . an appraiser must . . . identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic demand, the physical adaptability of the real estate, and market area trends." (Emphasis added.) The comment of Rule 1-3(a) states "[a]n appraiser must avoid making an unsupported assumption or premise about market area trends, effective age, and remaining life."

Rule 2-2(a)(x) states "[t]he content of a Self-Contained Appraisal Report must be consistent with the intended use of the appraisal and, at a minimum . . . when the purpose of the assignment is market value, describe the support and rationale for the appraisal's opinion of the highest and best use of the real estate." (Emphasis added.) The comment of Rule 2-2(a)(x) states "[t]he appraiser's reasoning in support of the opinion must be provided in the depth and detail required by its significance to the appraisal."
[5] Rule 1-4(a) states that "[i]n developing a real property appraisal, an appraiser must collect, verify, and analyze all information applicable to the appraisal problem. . . . When a sales comparison is applicable, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion." (Emphasis added.)

Rule 2-1(a) states that each written or oral real property appraisal report must clearly and accurately set forth the appraisal in a manner that will not be misleading." (Emphasis added.)